IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

BONNIE B.,
    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,
    Defendant.

Case No. 4:22-cv-04188-SLD-JEH

### Report and Recommendation

Now before the Court is the Plaintiff's Brief (Doc. 6), the Defendant's Brief (Doc. 9), and the Plaintiff's Reply Brief (Doc. 10). This matter has been referred for a report and recommendation. For the reasons stated herein, the Court recommends the Plaintiff's request to reverse and remand the unfavorable decision of the Defendant, Martin O'Malley, Commissioner of Social Security, be denied.[1]

**I**

Bonnie B. filed an application for disability insurance benefits (DIB) on October 15, 2019, alleging disability beginning on July 12, 2018. Her DIB claim was denied initially on July 27, 2020 and upon reconsideration on January 10, 2021. Following a hearing before the Honorable John M. Wood (ALJ) in September 2021 and the issuance of an unfavorable decision later that month, the Appeals Council (AC) remanded the case back to the ALJ for resolution of certain identified errors. A second hearing was held on June 8, 2022 before the same ALJ. At the hearing,

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 3) on the docket.

Bonnie was (as at the first hearing) represented by an attorney, and Bonnie and a vocational expert testified.

Following the second hearing, Bonnie's claim was denied on July 14, 2022. Her request for review by the AC was denied on October 25, 2022, making the ALJ's July 2022 Decision the final decision of the Commissioner. Bonnie timely filed the instant civil action seeking review of the ALJ's Decision on December 24, 2022.

## II

Bonnie argues remand is required because the ALJ "failed to include the mental limitations he found credible in his residual functional capacity determination or to explain why he was omitting those credible limitations." Plf's Brief (Doc. 6 at pg. 3).

## III

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1) is performing substantial gainful activity;

2) suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id*. An affirmative answer at Steps Three or Five leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on Steps One through Four. *Id*. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Bonnie claims error on the ALJ's part at Step Four.

## A

At Step One, the ALJ determined Bonnie had not engaged in substantial gainful activity since July 12, 2018, the alleged onset date. AR 16. At Step Two, the ALJ determined Bonnie had the following severe impairments: somatic dysfunction of cervical region; moderate thoracic spondylosis; tendinitis in the shoulder, status-post sprain of left ankle, and tremors in the bilateral hands. *Id*. At Step Three, the ALJ determined Bonnie did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 20. At Step Four, the ALJ made the following residual functional capacity (RFC) finding:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except she cannot climb ladders, ropes or scaffolds. She has to avoid environmental hazards such as unprotected heights and dangerous machinery. She can perform occasional overhead reaching with the dominant upper extremity, and perform all other bilateral manipulative functions frequently.

AR 21. The ALJ found Bonnie was capable of performing her past relevant work as a counselor as that work did not require the performance of work-related activities precluded by Bonnie's RFC. AR 26. The ALJ concluded Bonnie had not

been under a disability from July 12, 2018 through the date of the Decision, July 14, 2022.

**B**

At Step Two, whereas the ALJ found Bonnie had several severe physical impairments, he found her medically determinable mental impairments of bipolar affective disorder and anxiety disorder did not cause more than a minimal limitation in Bonnie's ability to perform basic mental work activities and were therefore nonsevere. AR 16. The ALJ went on to consider the medical records, opinions, and statements pertaining to Bonnie's mental health. As part of his evaluation, the ALJ considered the four broad functional areas of mental functioning set out in the Listing of Impairments: understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself. He determined Bonnie had "mild" limitation in all four areas. AR 17-18. At Step Four, the ALJ's RFC finding included no mental limitations. Because the ALJ's RFC finding contained no mental limitations and because the ALJ did not include a "more detailed assessment" of Bonnie's mental functioning at Step Four, Bonnie argues this matter must be remanded. The Commissioner responds that the ALJ's thorough analysis of Bonnie's mental impairments belies Bonnie's assignment of error.

At Step Two, the ALJ made clear he considered Bonnie's bipolar affective disorder and anxiety disorder "singly and in combination." AR 16. He then considered the following evidence. Bonnie was described as very manic and tangential upon presentation in the emergency department in August 2019 at which time she was noncompliant with medication, but she was described as doing "very well" once she agreed to take medication. AR 17 (citing AR 660). The ALJ observed the turnaround indicated Bonnie's "symptoms were adequately treated with prescription medication." *Id*. Noting the record elsewhere provided

5

Bonnie did well on medication, stopped taking medication due to side effects, was not on any medication at times, opted for CBD oil to treat her symptoms at times, replaced lithium with a herbal supplement, and expressed she did not want to restart her medication, the ALJ reasoned, "Despite the fluctuation in taking prescription medication, the claimant generally exhibited no significant abnormalities on mental status examinations[.]" *Id*. Examination results included adequate insight and judgment, normal concentration, and euthymic mood. *Id*. (citing AR 701, 704, 705, 706). The ALJ reasoned further that the combined lack of abnormalities on mental status exam and lack of consistency in taking prescription medications indicated Bonnie's mental impairments were not as severe as alleged. As for post-remand mental health evidence, records dated September 2021 through June 2022 from Associates in Mental Health included unremarkable mental status examinations, indicated Bonnie filled in for a pastor at her church and gave a sermon in May 2022, and provided she said she had been working more recently. *Id*. (citing AR 1240-49, 1440-45).

To support his "mild" limitation finding in the first functional area, the ALJ cited: Bonnie's own statement that her conditions affected her memory and understanding at times; her own statement that she did not need any special reminders to take care of personal needs and grooming but she needed reminders to take medication at times; she drove a car; and she had generally intact memory. AR 17 (citing AR 410, 411, 413, 663, 701, 704, 707, 993-98). The ALJ elaborated that evidence Bonnie drove a car "indicates she is able to understand, remember, and apply route information to get from one location to another." *Id*. To support his "mild" limitation finding in the second functional area, the ALJ cited Bonnie's own statement that her conditions affected her ability to get along with others. AR 18 (citing AR 413). But the ALJ also articulated: Bonnie's marriage indicated she was able to cultivate and foster relationships; Bonnie's church attendance indicated she

6

was able to congregate with others; and her work at a women's clothing store at which she helped others pick clothes indicated she was able to interact with strangers. *Id*. (citing AR 67, 68, 383-91, 412, 414, 620, 680, 701). The ALJ additionally cited Bonnie's representation that she got along with authoritative figures "fairly well," and the fact that the record described Bonnie as "polite," "pleasant," and "cooperative." *Id*.

To support his "mild" limitation finding in the third functional area, the ALJ again cited Bonnie's own statements: her conditions affected her ability to complete tasks and concentrate and follow instructions at times; the amount of time she could pay attention depended and "really varies;" and her ability to follow instructions depended on multiple factors. *Id*. (citing AR 413). He then cited records showing Bonnie generally exhibited intact attention and concentration, and she could spell "world" forward and backward correctly at her psychiatric consultative examination. *Id*. (citing AR 663, 673, 707, 997). To support his "mild" limitation finding in the fourth functional area, the ALJ cited Bonnie's ability to prepare simple meals, do laundry, shop for groceries, and care for others. *Id*. (citing AR 383-91, 408-18). The ALJ considered Bonnie's statement that she handled changes in routine "fairly well." *Id*. (citing AR 414). Finally, he noted that aside from appearing anxious at times, Bonnie generally appeared well developed, well nourished, alert, and oriented, and she exhibited appropriate mood and affect. *Id*. (citing AR 524, 588, 619).

The ALJ pointed to Bonnie's "no more than" mild limitations "<u>and</u>" that the evidence did not otherwise indicate more than a minimal limitation in her ability to do basic work activities in support of his non-severity finding. *Id*. (emphasis in original). Continuing, the ALJ found persuasive the State Agency psychological consultants' finding that Bonnie's mental impairments were nonsevere. AR 19. The ALJ determined the State Agency medical findings were supported by

detailed reports referencing evidence available at that time including mental status examinations and activities of daily living, and the findings were generally consistent with objective evidence from other sources. *Id.* The ALJ determined treating physician Dr. Valerie Flacco's December 19, 2019 opinion was not persuasive. *Id.* (citing AR 1047-94). Dr. Flacco opined Bonnie's symptoms interfered to the extent she was unable to maintain persistence and pace to engage in competitive employment, and Bonnie's symptoms interfered with her ability to retain employment if she became employed. AR 990. Dr. Flacco further opined the degree to which Bonnie's symptoms affected her mental functioning in various areas ranged from moderate to extreme, Bonnie had experienced episodes of decompensation of at least four or more in one year, each lasting two weeks, and Bonnie would likely miss four or more days of work per month due to psychologically-based symptoms. *Id.* The ALJ relied on the following in finding unpersuasive Dr. Flacco's opinion: the extreme limitations contained in her opinion were not supported by treatment notes, for example, they did not contain detailed mental status examinations documenting Bonnie's symptoms; symptoms supportive of the opined-to limitations would be documented in treatment notes given that she identified "extreme" limitation; Bonnie's bipolar disorder was described by Dr. Flacco as "stable doing ok" the same date she rendered her opinion; Dr. Flacco practiced family medicine and was not a psychiatrist with advanced training in the field of psychology; and other sources showed Bonnie generally exhibited no significant abnormalities on mental status examination. AR 19-20 (citing AR 1069).

The ALJ found persuasive psychiatric consultative examiner John Zagotta, Psy.D.'s March 20, 2020 opinion that Bonnie had adequate working memory task performance, adequate fund of knowledge, adequate reasoning, and adequate judgment test performance. AR 20 (citing AR 993-98). The ALJ observed Dr.

8

Zagotta's opinion was supported by "in-person examination using objective techniques" and consistent with objective evidence from other sources. *Id*. (citing AR 663, 701, 704, 707). Finally, the ALJ considered Bonnie's husband T.B.'s third-party function report in which he stated, among other things, she looked for employment opportunities daily, cared for her disabled husband and a dog, did not have issues with personal care, required reminders to take care of personal needs as well as to take her medication, was able go out alone, spend time with others, and was easily distracted. *Id*. (citing AR 383-91).

      The Court understands Bonnie's point that she is not taking issue with how the ALJ weighed the medical evidence or what medical opinions and other facts were considered, but the Court nevertheless finds the ALJ did not commit fatal error. SSR 96-8p provides that the mental RFC assessment at Steps 4 and 5 requires "a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments" and which are summarized on the Psychiatric Review Technique Form used at earlier steps. SSR 96-8p at *4. Here, the ALJ engaged in a sufficiently exhaustive analysis of the mental health evidence at Step Two to simultaneously satisfy the ALJ's burden at Step Four. That the ALJ merely engaged in the requisite "more detailed assessment" at Step Two is not enough to find reversible error. After all, the Court must read a decision as a whole. *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004). How the ALJ weighed the medical evidence and what medical opinions and other facts were considered (here, at Step Two) illustrates the ALJ's reasoning as to Bonnie's functional limitations (for purposes of Step Four). As the Commissioner notes, Bonnie does not engage with any of the records cited by the ALJ in his Decision, instead, Bonnie simply cites regulatory language from the four broad functional areas and asserts that her mild limitations needed to have corresponding limitations in the RFC assessment. The

9

Court must not reweigh the evidence. *See Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (explaining that in reviewing an ALJ's decision, the court cannot reweigh evidence, resolve conflicts in the record, decide questions of credibility, or otherwise substitute its own judgment for that of the Commissioner).

As for 20 C.F.R. § 404.1545(a)(2), it provides that an ALJ will consider all of a claimant's medically determinable impairments, including those that are not "severe" when the ALJ assesses the claimant's RFC. Here, the ALJ considered Bonnie's nonsevere mental impairments together with her severe physical impairments via his consideration of Dr. Flacco's opinion and T.B.'s third-party function report. The ALJ noted Dr. Flacco practiced family medicine, had treated Bonnie since September 2003, and was "knowledgeable in the claimant's overall health and treatment[.]" AR 19. Given her treatment notes and the length of time she treated Bonnie, it appears inescapable that Dr. Flacco's opinion as to Bonnie's mental limitations was intertwined with her treatment of Bonnie's physical impairments. The ALJ's explicit statement as to T.B.'s third-party function report reflects his understanding that T.B.'s statements spoke to the combination of Bonnie's severe and non-severe impairments: T.B.'s statement "provides context regarding some of the challenges faced by the claimant relative to coping with the chronic nature of her impairments and maintaining her daily activity level secondary to them." AR 20. The Court can trace the path of the ALJ's reasoning. *See Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (stating that an ALJ must "sufficiently articulate his assessment of the evidence to assure us that the ALJ considered the important evidence . . . and to enable us to trace the path of the ALJ's reasoning"). The omission of mental limitations from the RFC and the explanation for doing so appears in the Decision at Step Two. It would be a needless formality to have the ALJ repeat substantially similar factual analyses at every step. *See Rice*, 384 F. 3d at 370 n.5.

Bonnie insists that the distinction between mild limitations and no limitations cannot be ignored, and it is beyond dispute that mental limitations found credible at Steps Two and Three are functional limitations that must be considered in assessing the claimant's RFC. The regulations provide that a "mild" limitation in mental functioning means a person's ability to function "independently, appropriately, effectively, and on a sustained basis is *slightly* limited." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.00F(2)(b) (emphasis added). The Seventh Circuit has said "a mild, or even a moderate, limitation in an area of mental functioning does not prevent an individual from functioning satisfactorily." *Sawyer v. Colvin*, 512 F. App'x 603, 611 (7th Cir. 2013) (unpublished opinion) (internal citations omitted). Neither the definition of "mild" nor the applicable regulations dictate the inclusion of "mild" limitations in mental functioning in the RFC finding. *See Deborah E. v. Kijakazi*, No. 20-cv-02004, 2021 WL 6807995, at *2 (C.D. Ill. Dec. 20, 2021) ("While an 'ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record,' *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014), it is possible that a limitation is unnecessary to include in the RFC assessment") (citing *Sawyer*, 512 F. App'x at 611).

Lastly, Bonnie argues the overall question in this case is not whether she could perform her past relevant work as a counselor, but whether the ALJ considered and explained the vocational impact of all the limitations he found credible on Bonnie's ability to perform that occupation. Pointing out that the job of counselor is skilled with a specific vocational preparation (SVP) rating of 7 (skilled carries an SVP of 5-9) and a reasoning level of 5 (reasoning levels range from 1 to 6), Bonnie contends the ALJ did not even attempt to explain how she

11

could perform the work of counselor with mild mental functional limitations.[2] The Court has already rejected Bonnie's argument that the ALJ did not sufficiently explain the omission of mild mental limitations from his RFC finding. *See supra*. That forecloses Bonnie's final contention.

## IV

For the reasons set forth above, it is recommended that: 1) the Commissioner's decision denying the Plaintiff's application for disability insurance benefits be affirmed; 2) the Clerk of Court be directed to enter judgment as follows: "IT IS ORDERED AND ADJUDGED that the decision of the Defendant, Martin O'Malley, Commissioner of Social Security, denying benefits to the Plaintiff, Bonnie B., is AFFIRMED."; and 3) this matter be terminated.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended*.

Entered on February 20, 2024.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE

---

[2] In a footnote, Bonnie states the ALJ did not list the DOT code for the occupation adopted (counselor) as past relevant work in his Decision whereas the VE at the second hearing noted the DOT code for clinical therapist. Plf's Brief (Doc. 6 at pg. 10 n.2). She notes the VE at the second hearing testified that her past relevant work was that of a clinical therapist and that the occupation was previously listed as "counselor" per the DOT. *Id*. Bonnie further states that because it was evident there was a question as to what the actual occupation performed by her was, remand for further consideration and development would be prudent in this case. The Court notes the DOT provides both counselor and clinical therapist have a SVP of 7 and a reasoning level of 5. *Compare* DOT 045.107-010, https://occupationalinfo.org/04/045107010.html (last visited Feb. 16, 2024); *and* DOT 045.107-050, https://occupationalinfo.org/04/045107050.html (last visited Feb. 16, 2024). The Court will delve no further into a passing argument for remand appearing in a footnote.